# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY CALI, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-1627 |
| v. | |
| BOROUGH OF DUNMORE, et al., | (JUDGE CAPUTO) |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are Defendants Borough of Dunmore ("Borough"), Borough of Dunmore Council ("Council"), Borough of Dunmore Civil Service Commission ("Commission"), Borough of Dunmore Police Association ("Association"), Michael Cummings, Joseph Loftus, Thomas Hennigan, Joseph Talutto, Leonard Verrastro, John Barrett, William Gallagher, and Ralph Marino's (collectively "Defendants") Motions for Summary Judgment (Docs. 68 and 71) as to Plaintiff Anthony Cali's Amended Complaint (Doc. 55).  For the reasons stated below, Defendants' motions will be granted as to Counts I, II and V of Plaintiff's Amended Complaint.  The Court has jurisdiction over Counts I, II and V of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1331.  The Court will decline to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Counts III and IV of Plaintiff's Amended Complaint, and will dismiss these claims without prejudice.

## BACKGROUND

The relevant facts presented in the summary judgment record, viewed in the light most favorable to Plaintiff, are as follows.  Plaintiff has been employed as a police officer for the Borough since 1980. (Cali Dep. 6:16-8:12, May 2, 2006, Doc. 88.)  Plaintiff has also been a member of the Association, the union that represents Borough police officers, since that time. (Cali Dep. 27:3-4.)  Since 1996, Plaintiff has worked full-time for the Borough as an "active reserve" police officer. (Cali Dep. 24:22-25:23.)  As an active reserve police officer, Plaintiff does not receive the same pay rate and pension benefits as "regular" full-time police officers. (Cali Dep. 26:1-6.)

Plaintiff's employment with the Borough is governed by a collective bargaining agreement ("CBA"). (Doc. 71-8.)  The CBA provided for a grievance and arbitration procedure requiring that any grievance of a police officer shall first be filed with the Council. (CBA between the Borough of Dunmore and the Dunmore Police Association, Article 18, Doc. 71-3 at 10.)  In the event that the Council denies a police officer's grievance, the police officer must then submit the grievance to binding arbitration pursuant to the rules and regulations of the American Arbitration Association. (*Id.*)

On December 31, 2003, the CBA between the Association and the Borough expired. (*Id.*)  The Association and the Borough were unable to resolve their negotiations directly, and so these parties submitted their dispute to binding arbitration. (*Id.*)

A panel of the American Arbitration Association rendered an arbitration award on February 4, 2005. (*Id.*)  Pursuant to the new CBA, in order to be promoted to regular, full-time police officer, Plaintiff would be required to take and pass a civil service examination

("the exam"), which would be administered by the Commission. (*Id.*)

Pursuant to Section 714 of the Rules and Regulations of the Commission, "[t]he minimum passing grade for an examination for any position in the classified service for which a numerical grade is given shall be a score of seventy (70%) per cent, and each applicant for any such position shall score at least seventy (70%) per cent on each element of the examination except for those elements which shall be rated Pass/Fail." (Doc. 82-5.)  According to Plaintiff's interpretation of this provision, in order for him to pass the exam, he had to achieve an overall score of at least seventy percent (70%), without regard to how he performed on each individual section of the exam.  Conversely, Defendants contend that Plaintiff was required to score at least seventy percent (70%) on each section of the exam – math, grammar and writing – in order to pass the exam.  It is undisputed that, had Plaintiff passed the exam, he would have become a regular, full-time police officer. (Doc. 71-8.)  As such, he would receive a higher rate of pay and become a member of the pension plan. (*Id.*; *see* ¶¶ 2. C., 5.)

Plaintiff made his opposition to the exam known to Defendant Hennigan. (Cali Dep. 61:6-62:12.)  Specifically, Plaintiff felt it "was unfair that we had to take a test because of all the years of service we put in, how many times we faced danger, and we should be grandfathered [in] just like the other officers were and the firemen." (Cali Dep. 54:7-12.)  Shortly thereafter, Plaintiff was suspended from the Association for one month. (Cali Dep. 70:13-71:15; Email from Richard Barth to Anthony Cali, dated May 24, 2005, Doc. 91-6.)

On May 21, 2005, Plaintiff and twelve other active reserve police officers took the exam. (Cali Dep. 96:9-13; Doc. 71-14.)  Plaintiff received an overall score of seventy-two

3

percent (72%). (Doc. 60-14.)  However, Plaintiff received a score of forty percent (40%) on the math section of the exam. (*Id.*)  As such, the Commission informed Plaintiff that he had failed the exam. (*Id.*)  He was one of three (3) active reserve officers to fail the exam. (*See* Doc. 71-14.)  The ten (10) officers who passed the exam became regular, full-time officers and were placed above Plaintiff in terms of seniority, notwithstanding the fact that Plaintiff was the longest-tenured officer of those who took the exam. (Cali Dep. 98:4-14.)

Thereafter, Plaintiff filed a grievance with the Association. (Cali Dep. 114:24.)  He did not, however, file a grievance with the Council as required by Article 18 of the CBA. (Cali Dep. 114:24-121:2.)  Moreover, Plaintiff did not prosecute his grievance through to arbitration as required by the CBA. (*See id.*)

On August 11, 2005, Plaintiff filed a Complaint in this Court. (Doc. 1.)  Plaintiff filed an Amended Complaint on August 16, 2006. (Doc. 55.)  Therein, Plaintiff alleged that he had been deprived of his rights to procedural due process, freedom of speech and right to petition the government under color of state law, in violation of 42 U.S.C. § 1983. (*Id.*) Plaintiff also alleged state law claims against the Association for breach of duty of fair representation and against the Borough for breach of the CBA. (*Id.*)

On January 4, 2006, the Borough adopted a resolution providing that "any individual seeking employment, continued employment or re-employment as a Police Officer with the [Borough] shall provide verifiable documentation that the individual has passed a Civil Service Examination for entry level Police Officer issued by a Civil Service Commission within the Commonwealth of Pennsylvania." (Doc. 71-20.)  The Borough cited "the importance of maintaining a Police Force comprised of competent

4

professionals" as the reason for imposing this civil service qualification. (*Id.*)

Before the January 2006 resolution was enforced, the Association filed a grievance with the Borough. (Springer Dep. 126:14-127:18, May 9, 2006, Doc. 82-2.) The resolution was vacated on April 24, 2006. (Springer Dep. 126:14-16; Pl.'s Br. in Opp. at 23.)  Plaintiff concedes that the resolution was never enforced against him – i.e. Plaintiff was not fired because he was not civil service qualified. (Pl.'s Br. in Opp. at 24, Doc. 89.)

On September 18, 2006, Defendants filed their Motions for Summary Judgment as to Plaintiff's Amended Complaint. (Docs. 68 and 71.)  That same day, Defendants also filed supporting briefs and memoranda of law. (Docs. 69 and 72.)  Plaintiff filed opposition papers in early October 2006. (Docs. 89-92.)  Consequently, Defendants' motions are fully briefed and now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a

genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

I. **Defendants Borough of Dunmore Council & Borough of Dunmore Civil Service Commission**

The Court will grant summary judgment in favor of Defendants Council and Commission as to all of Plaintiff's claims brought against them. Departments that are merely an administrative arm of the local municipality, or a sub-unit of the municipality, are not separate legal entities and, as such, cannot be sued in conjunction with the municipality. *See, e.g., Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004); *Patterson v. Armstrong County Children & Youth Servs.*, 141 F. Supp. 2d 512, 542 (W.D. Pa. 2001). Consequently, the Court will grant summary judgment in favor of Defendants Council and Commission.

II. **Defendants Cummings, Loftus, Hennigan, Talutto, Verrastro, Barrett, Gallagher and Marino**

The Court will grant summary judgment in favor of Defendants Cummings, Loftus, Hennigan, Talutto, Verrastro, Barrett, Gallagher and Marino as to Plaintiff's claims against them in their official capacities. These claims are merely another way of asserting claims against the Borough itself. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 191 (3d Cir. 1993).

III. **Plaintiff's Federal Law Claims (Counts I, II and V)**

   A. **Defendant Dunmore Police Association**

The Court will dismiss Plaintiff's constitutional claims brought against Defendant Association. The Association is Plaintiff's labor union; it is not a state actor. A labor union is a private entity, *Driscoll v. Int'l Union of Operating Eng'rs, Local 139*, 484 F.2d 682, 690 n. 21 (7th Cir. 1973), *cert. denied*, 415 U.S. 960 (1974). As such, a labor union may not be sued for constitutional violations. *Talley v. Feldman,* 941 F. Supp. 501, 512

(E.D. Pa. 1996). If, however, a plaintiff demonstrates that the government significantly encouraged the labor union to engage in constitutional violations, he may be able to maintain a suit against the union for constitutional violations. *Id.*

Here, Plaintiff has failed to present any evidence that the Association engaged in constitutional violations at the behest of the Borough. As such, the Court will grant summary judgment in favor of the Association as to Counts I, II and V of Plaintiff's Amended Complaint.

### B.   Procedural Due Process (Count I)

Plaintiff's procedural due process claim must be dismissed on the ground that he did not exhaust the administrative remedies available to him – i.e. he did not proceed to arbitration. There is a "strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees." *Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1572 (3d Cir. 1995). "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him . . . ." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*

In *Alvin*, the United States Court of Appeals for the Third Circuit affirmed the dismissal of a plaintiff's section 1983 claims because the plaintiff failed to follow the grievance procedures outlined in his employment handbook. *Id.* at 118. Like the plaintiff in *Alvin*, Plaintiff has failed to complete the administrative grievance procedure mandated by the CBA because he has not completed the arbitration required by Article 18 of the CBA. (*See* Doc. 71-3 at 10.) Only after completion of arbitration proceedings may a

plaintiff assert a procedural due process claim, and only then upon proof that the arbitration was "patently inadequate." *Alvin*, 227 F.3d at 116. "[W]here an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled under the Fourteenth Amendment." *Dykes,* 68 F.3d at 1565.

Accordingly, because he did not avail himself of the arbitration procedures provided to him by the CBA, Plaintiff's due process claim (Count I) must be dismissed.

### B. First Amendment Retaliation (Counts II and V)

To determine whether a public employee's speech is entitled to First Amendment protection, courts apply a three-step test. *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005). First, the public employee's speech must address a matter of public concern. *Id.* (citing *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001)); *Connick v. Myers*, 461 U.S. 138, 147 (1983). Second, if the public employee's speech does address a matter of public concern, then the employee's interest in the speech must outweigh the state's interest as an employer in promoting efficiency and avoiding disruption. *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Third, the public employee must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Id.* A public employer can rebut an employee's claim of retaliation by demonstrating that it would have reached the same decision, even in the absence of the protected conduct. *Id.*

In Count II, Plaintiff alleges that he was suspended from the Association for one month in retaliation for voicing his opposition to the exam to Defendant Hennigan. In Count V, Plaintiff alleges that, in January 2006, the Borough passed a resolution requiring that, in order to serve as a police officer, one must be civil service qualified in

retaliation for his filing of this action.

### 1.     Free Speech (Count II)

The Court concludes that Plaintiff's speech did not involve a matter of public concern.  "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997) (quoting *Connick*, 461 U.S. at 146).  The inquiry into whether speech involves a matter of public concern is a legal one, to be determined by the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48 & n.7.

Here, there is no indication that Plaintiff's speech involved a matter of political, social, or other concern to the community.  Rather, Plaintiff's speech involved merely his personal opposition to taking the civil service exam, a matter of purely personal interest.  There is absolutely nothing to suggest that Plaintiff, in voicing his opposition to the exam, was speaking on behalf of the public or in the public's interest.  Simply put, the issue of whether to require candidates to pass a civil service exam in order to become full-time police officers is of little or no interest to the general public.  Consequently, the Court will grant Defendants' motion for summary judgment as to Count II of Plaintiff's Amended Complaint.

### 2.     Right to Petition (Count V)

The Court will grant summary judgment in favor of Defendants as to Count V of Plaintiff's Amended Complaint.  Under Third Circuit jurisprudence, a public employee is protected under the petition clause of the First Amendment against retaliation for having

filed a lawsuit, even if that lawsuit addresses matters of purely private concern, so long as the lawsuit is not a "sham". *San Filippo v. Bongiovanni*, 30 F.3d 424, 443 (3d Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995).  Here, Plaintiff's action clearly does not amount to a "sham".  As such, Plaintiff's filing of his action in this Court constitutes protected activity under the First Amendment.

### a. Defendant Borough

The Court will grant summary judgment as to Plaintiff's First Amendment retaliation claim concerning the Borough's January 2006 resolution.  Plaintiff has failed to create a genuine issue of material fact as to whether a causal link exists between his filing of this action and the Borough's enactment of the January 2006 resolution.

As noted above, to succeed on a First Amendment retaliation claim, a plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.

The timing of the alleged retaliation, by itself, rarely if ever can be sufficient to establish a causal link. *Krouse v. Am. Sterilzer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). Other evidence is needed unless the timing of the alleged retaliatory action is "unusually suggestive" of retaliatory motive. *Id.*  Moreover, "the passage of a long period of time between protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (citing *id.* at 503-04 and *Woodson v. Scott Paper Co.*, 103 F.3d 913, 920-21 (3d Cir. 1997)).

Here, not only did five (5) months pass between the filing of Plaintiff's action and

11

the Borough's enactment of the resolution imposing a civil service qualification upon those wishing to serve as Borough police officers, but Plaintiff has failed to offer other evidence in support of his retaliation claim. Indeed, aside from Plaintiff's bald assertion that the resolution was passed in retaliation to his filing of this action, there is simply no evidence to suggest that a retaliatory motive caused or contributed to the enactment of the January 2006 resolution.

Moreover, Plaintiff concedes that the resolution was never actually enforced against him – i.e. he was not fired, nor was any adverse action taken against him, because he was not civil service qualified. (Pl.'s Br. in Opp. at 24.) Rather, pursuant to the CBA, the Association filed a grievance with the Borough and, on April 24, 2006, the Borough vacated the resolution. (Springer Dep. 126:14-16; Pl.'s Br. in Opp. at 23.)

Accordingly, due to the passage of time and the lack of other evidence demonstrating a retaliatory animus on the part of the Borough, no reasonable juror could conclude that Plaintiff's filing of this action was a substantial or motivating factor in the Borough's enactment of the January 2006 resolution. Consequently, the Court will grant summary judgment as to Count V of Plaintiff's Amended Complaint.

### b.     Defendant Hennigan

Even assuming arguendo that Plaintiff has created a genuine issue of material fact as to whether the Borough passed the January 2006 resolution in retaliation to Plaintiff's filing of this action, Defendant Hennigan, in his individual capacity, would be entitled to summary judgment as he is immune from suit pursuant to the doctrine of legislative immunity.

"Absolute legislative immunity attaches to all actions taken 'in the sphere of

12

legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). "Legislative immunity shields from suit not only legislators, but also public officials outside of the legislative branch when they perform legislative functions." *Baraka v. McGreevey*, --- F.3d ----, 2007 WL 840306, at *3 (3d Cir. Mar. 21, 2007) (citing *id.*).

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. In *Bogan*, the Supreme Court held that the act of passing an ordinance that eliminated the plaintiff's position "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55-56.

Pennsylvania has granted legislative powers to Borough Councils. The Pennsylvania Borough Code, 53 P.S. § 46001 *et seq.*, provides at section 46006 as follows: "It shall be the duty of the borough council: . . . [t]o enact, revise, repeal and amend such bylaws, rules, regulations, ordinances and resolutions, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough and to provide for the enforcement of the same."

As in *Bogan*, the instant case presents a situation in which the Borough Council enacted a resolution that concerned how best to serve and protect its constituents and to provide for the effective enforcement of the laws of the Commonwealth. As such, the concerns addressed by the January 2006 resolution implicate the discretionary, policymaking processes traditionally assigned to legislators. The resolution bore all the hallmarks of traditional legislation. Accordingly, Defendant Hennigan enjoys legislative

13

immunity from suit and the Court will grant summary judgment in his favor as to Count V of Plaintiff's Amended Complaint.

## IV.     Plaintiff's State Law Claims (Counts III and IV)

Whereas Plaintiff's now dismissed federal law claims were the bases for subject matter jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against the Association for breach of a union's duty of fair representation (Count III) and against the Borough for breach of the CBA (Count IV). 28 U.S.C. § 1367(c) (a federal district court may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all claims over which it has original jurisdiction); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").  Accordingly, the Court will dismiss Counts III and IV of Plaintiff's Amended Complaint without prejudice.

## CONCLUSION

For the above stated reasons, the Court will: (1) grant summary judgment in Defendants' favor as to Counts I, II and V of Plaintiff's Amended Complaint; and (2) dismiss without prejudice Counts III and IV of Plaintiff's Amended Complaint.

An appropriate Order follows.

 April 13, 2007                                                    /s/ A. Richard Caputo
Date                                                                        A. Richard Caputo
                                                                                United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY CALI,

    Plaintiff,

    v.

BOROUGH OF DUNMORE, et al.,

    Defendants.

CIVIL ACTION NO. 3:05-CV-1627

(JUDGE CAPUTO)

## ORDER

**NOW**, this ___13th___ day of April, 2007, **IT IS HEREBY ORDERED** that:

(1) Defendants Borough of Dunmore, Borough of Dunmore Council, Borough of Dunmore Civil Service Commission, Borough of Dunmore Police Association, Michael Cummings, Joseph Loftus, Thomas Hennigan, Joseph Talutto, Leonard Verrastro, John Barrett, William Gallagher and Ralph Marino's Motions for Summary Judgment (Docs. 68 and 71) as to Counts I, II and V of Plaintiff's Amended Complaint (Doc. 55) are **GRANTED**.

(2) Counts III and IV of Plaintiff's Amended Complaint are **DISMISSED** without prejudice.

(3) The Clerk of the Court shall mark this case as **CLOSED**.

                                        /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge